IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Julio E. Tapia and Edith M.          )
Tapia,                                )
                                      )
        Plaintiffs,                   )
                                      )
        v.                            )      Case No. 1:09cv1025(GBL)
                                      )
U.S. Bank, N.A., as Trustee           )
for RFMSI 2006-S3 Trust,              )
RFMSI Series 2006-S3 Trust,           )
Homecomings Financial LLC,            )
GMAC Mortgage LLC,                    )
Bank of America, N.A.,                )
United Guaranty Residential           )
Insurance Company of                  )
North Carolina,                       )
Residential Funding Company, LLC,)
Mortgage Electronic Registration )
System, Inc., and                     )
Samuel I. White, P.C.,                )
                                      )
        Defendants.                   )

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants U.S. Bank,

N.A., as Trustee for RFMSI 2006-S3 Trust("U.S. Bank"); RFMSI

Series 2006-S3 Trust; Homecomings Financial LLC ("Homecomings");

GMAC Mortgage LLC ("GMAC"); Residential Funding Company LLC

("Residential"); Mortgage Electronic Registration Systems, Inc.

("MERS"); and Samuel I White, P.C.'s ("SIW") Motion to Dismiss

First Amended Complaint (Dkt. No. 41) and Defendants United

Guaranty Residential Insurance Company of North Carolina

("United Guaranty") and Bank of America, N.A.'s ("Bank of
America") Motion to Dismiss all Claims in the Amended Complaint
Asserted Against United Guaranty Residential Insurance Company
of North Carolina and Bank of America, N.A. (Dkt. No. 43).  This
case concerns Plaintiffs' allegations that Defendants improperly
instituted a non-judicial foreclosure proceeding on their home.
There are five issues before the Court.  The first issue is
whether Plaintiffs sufficiently allege a claim for declaratory
relief where the foreclosure sale has already occurred but they
now ask the Court to declare that the foreclosure on the
property is void and that none of the Defendants has any right,
title, or interest in the First Promissory Note.  The second
issue is whether Plaintiffs sufficiently assert a similar
declaratory action seeking a declaration that none of the
Defendants has any right, title, or interest in the Second
Promissory Note.  The third issue is whether Plaintiffs
sufficiently state a breach of fiduciary duty claim against SIW
where Plaintiffs allege that SIW failed to ensure the entities
that sought to enforce the First Deed of Trust (the "Deed of
Trust") and foreclose Plaintiffs' property had the legal right
to do so.  The fourth issue is whether Plaintiffs state a
plausible quiet title claim where they acknowledge that they
received demands from Defendants for payments on the promissory
notes but refused to pay.  The fifth issue is whether Plaintiffs

2

sufficiently state a claim against SIW under the Fair Debt
Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*,
where Plaintiffs allege that SIW, as a debt collector,
misrepresented the status, amount, and ownership of the debt
owed by Plaintiffs on the promissory notes.[1]

The Court grants Defendants U.S. Bank, RFMSI Series 2006-S3
Trust, Homecomings, GMAC, Residential, MERS, and SIW's
(collectively, "U.S. Bank Defendants") Motion to Dismiss Counts
I, II, III, IV, and V of the Amended Complaint and Defendants
United Guaranty and Bank of America's (collectively, "United
Guaranty Defendants") Motion to Dismiss Counts II, IV and V of
the Amended Complaint.[2]  The Court grants the U.S. Bank
Defendants' Motion to Dismiss as to Count I (Declaratory Action
on the First Trust Note) because declaratory relief is not
available where the alleged wrongs have already been suffered
and, alternatively, because Plaintiffs fail to state plausible
grounds for declaratory relief.  The Court grants both Motions
to Dismiss as to Count II (Declaratory Action on the Second
Trust Note) because Plaintiffs fail to allege facts plausibly
suggesting that no Defendant has any right, title, or interest

---

[1] Count V of the Amended Complaint initially alleged that Defendants
Homecomings, GMAC, Residential, Bank of America, United Guaranty, MERS, SIW,
and LTD Financial Services ("LTD Financial") violated FDCPA.  (Am. Compl. ¶¶
145-148.)  However, Plaintiffs withdrew Count V with respect to all
Defendants except SIW.  (Pls.' Opp'n to U.S. Bank's Mot. to Dismiss 16.)

[2] Dismissal of the Counts is with prejudice for the reasons stated herein.

in the Second Promissory Note.   The Court grants the U.S. Bank
Defendants' Motion to Dismiss as to Count III (Breach of
Fiduciary Duty) because Plaintiffs fail to state a plausible
basis for a breach of fiduciary duty claim against SIW as the
allegations fail to show that Defendants lacked authority to
enforce the Deed of Trust.   The Court grants both Motions to
Dismiss as to Count IV (Quiet Title) because the facts
Plaintiffs allege fail to plausibly suggest that Plaintiffs have
superior title.   The Court grants both Motions to Dismiss as to
Count V (Violation of the FDCPA) because the Amended Complaint
does not allege sufficient facts to support a FDCPA claim
against SIW.[3]

I.  BACKGROUND

     This action arises from a residential mortgage foreclosure.
Plaintiffs Julio and Edith Tapia purchased the property located
at 25759 Tullow Place, South Riding, VA 20152 (the "Property")
on January 31, 2006.   They signed two deeds of trust and two
promissory notes in the amounts of $625,800.00 ("First
Promissory Note") and $100,00.00 ("Second Promissory Note"),[4]

---

[3] The Court dismisses Count V as to all Defendants other than SIW as
unopposed.   (Pls.' Opp'n to U.S. Bank's Mot. to Dismiss 16.)

[4] Plaintiffs originally alleged that the Second Promissory Note was for the
amount of $98,483.72.   (Compl. ¶ 24.)

respectively, each naming First Savings Mortgage Corporation ("First Savings") as the Lender and MERS as the beneficiary.[5]

In 2008, Plaintiffs began receiving demands for payment and threats of foreclosure from entities including SIW[6] and Homecomings, alleging that the first loan was in default.[7]  On October 14, 2008, Plaintiffs, through counsel, sent out a "Qualified Written Request" ("QWR") pursuant to the FDCPA and Section 6 of the Real Estate Settlement Procedures Act ("RESPA").[8]  On October 28, 2008, Homecomings responded to the QWR by providing copies of the First Promissory Note, the Deed of Trust, the settlement statement, and the payment history of the account.  The Deed of Trust[9] states that "[t]he beneficiary

---

[5] The Deed of Trust indicates that MERS is also the "nominee for Lender and Lender's successors and assigns."  (Deed 2.)

[6] The Amended Complaint alleges that Plaintiffs received two letters from SIW dated May 22, 2008.  In the first letter, SIW identified itself as a debt collector representing MERS and stated that the Plaintiffs had defaulted on the deed of trust.  In this letter, SIW also informed Plaintiffs that the original note was not available.  In the second letter, SIW identified itself as a debt collector representing Homecomings.

[7] Plaintiffs do not allege that the loans were current when they received the demands.  In fact, they argue that they "brought this suit against these Defendants to ascertain to whom the money is owed."  (Pls.' Opp'n to U.S. Bank's Mot. to Dismiss 5; Pls.' Opp'n to United Guaranty's Mot. to Dismiss 4.)

[8] The Amended Complaint does not specify to whom Plaintiffs sent the QWR.

[9] Plaintiffs reference and rely on the terms of the Deed of Trust in the Amended Complaint.  In addition, Plaintiffs do not challenge the authenticity of the Deed of Trust as attached to the U.S. Bank Defendants' Motion to Dismiss the Amended Complaint.  Therefore, the Court can consider this document in deciding the current motion.  *See American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (stating that in deciding whether to dismiss a complaint, a court may consider a document that is attached to a defendant's motion to dismiss if the document is "integral to and explicitly relied on in the complaint" and "the plaintiffs do not

of this Security Instrument is MERS (solely as nominee for

Lender and Lender's successors and assigns) and the successors

and assigns of MERS."  (Deed of Trust 4.)  The Deed of Trust

also provides

> Borrower understands and agrees that MERS holds only legal
> title to the interests granted by Borrower in this Security
> Instrument, but, if necessary to comply with law or custom,
> MERS (as nominee for Lender and Lender's successors and
> assigns) has the right:  to exercise any or all of these
> interests, including, but not limited to, the right to
> foreclose and sell the Property; and to take any action
> required of Lender including, but not limited to releasing
> and canceling this Security Instrument.

(Deed of Trust 4.)  The Deed of Trust further provides "[t]he

[First Promissory] Note or a partial interest in the Note

(together with this Security Instrument) can be sold one or more

times without prior notice to Borrower."  (Deed of Trust 12.)

Plaintiffs continued receiving further correspondence from

SIW and GMAC regarding the First Promissory Note.  On March 20,

2009, SIW sent Plaintiffs a letter describing itself as a debt

collector, indicating that U.S. Bank was creditor, and stating

that the amount of the debt was $673,104.01.  On April 24, 2009,

SIW sent Plaintiffs a letter stating that the amount of the debt

was $684,027.24.[10]  On June 10, 2009, GMAC sent a letter to

---

challenge its authenticity." (citing *Phillips v. LCI Int'l Inc.*, 190 F.3d
609, 618 (4th Cir. 1999)).

[10] SIW attached a payment history to this letter, and Plaintiffs allege that
"the amounts disclosed as being applicable to the [First] note do not add up
to the $673,000 or the $684,027.24 of either" SIW letter.  (Am. Compl. ¶ 41.)

Plaintiffs informing Plaintiffs that GMAC was servicing the account on behalf of Residential, which "currently owns" the interest in the account.  According to GMAC, as of June 4, 2009, the amount of debt was $687,166.13.  By letter dated July 20, 2009, SIW informed Plaintiffs that the Property would be foreclosed on August 14, 2009.  The letter included a document titled "SUBSTITUTION OF TRUSTEE" allegedly executed by MERS on May 12, 2008, in which MERS appointed SIW as substitute trustee. The property was foreclosed on August 14, 2009.

As to the Second Promissory Note, Plaintiffs sent a QWR to Countrywide Home Loans, Inc. ("Countrywide")[11] on August 14, 2009.  In response to the QWR, Countrywide informed Plaintiffs that it was the servicer of the second loan.[12]  Plaintiffs then received demands for payment from LTD Financial on behalf of United Guaranty which claimed to have an interest in the Second Promissory Note.  United Guaranty's claim of interest in the

---

[11] Plaintiffs named Countrywide as a defendant in the original Complaint. However, Plaintiffs do not name Countrywide as a defendant in the Amended Complaint.  Rather, Plaintiffs allege Countrywide is a division of Bank of America.  (Am. Compl. ¶ 6.)  Defendants United Guaranty and Bank of America assert that Countrywide and Bank of America are separate legal entities and that Countrywide is not a division of Bank of America.

[12] Plaintiffs allege that BAC Home Loans Servicing, Inc., a subsidiary of Bank of America, informed them that it was the servicer of the loan.  (Am. Compl. ¶ 45.)  Plaintiffs then state that Countrywide was the servicer of the loan. (Pls.' Opp'n to U.S. Bank's Mot. to Dismiss 3.)

note stemmed from its alleged pay-out to Countrywide on a credit enhancement policy.[13]

On August 13, 2009, Plaintiffs filed a complaint in the Circuit Court for Loudoun County alleging (1) Defendants Homecomings, GMAC, SIW, Bank of America, United Guaranty, MERS, and LTD Financial violated the FDCPA during the foreclosure process; (2) an entitlement to a judgment declaring the foreclosure unlawful; (3) SIW breached its fiduciary duty during the foreclosure process; (4) the title of the Property was vested in Plaintiffs alone; (5) an entitlement to an injunction staying the foreclosure on the Property; and (6) MERS and SIW fraudulently misrepresented their authority to conduct the foreclosure.[14]  On September 10, 2009, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1331.  On September 17 and 18, 2009, Bank of America (Dkt. No. 3) and United Guaranty (Dkt. No. 5) moved the Court to dismiss the Complaint for failure to state a claim upon which relief could be granted and Homecomings, GMAC, Residential, MERS, and SIW filed a Motion for Judgment on the Pleadings on September 24, 2009 (Dkt. No. 7).  The Court granted these motions on November 20, 2009.  On

---

[13] Plaintiffs only allege that there was a pay-out on a securitized mortgage pool policy issued to cover a second trust mortgage securitization pool. (Am. Compl. ¶ 49.)  Details of the pay-out are unknown.  (Am. Compl. ¶ 50.)

[14] Plaintiffs also requested that the Circuit Court for Loudoun County deny or waive any requested bond pursuant to sections 107 and 8.01-129 of Virginia Code.

January 8, 2010, Plaintiffs filed an Amended Complaint which
includes the following counts:

> Count I (Declaratory Action on the First Trust Note),
> Defendants Homecomings, GMAC, Residential, U.S. Bank, RFMSI
> Series 2006-S3 Trust, MERS and SIW;
>
> Count II (Declaratory Action on the Second Trust Note),
> Defendants Bank of America and Countrywide, LTD Financial,[15]
> United Guaranty, MERS and any named Defendant claiming an
> interest;
>
> Count III (Breach of Fiduciary Duty), Defendant SIW;
>
> Count IV (Quiet Title), any competing interest; and
>
> Count V (Violation of the FDCPA), Homecomings, GMAC, Bank
> of America and Countrywide, LTD Financial, United Guaranty,
> MERS and SIW.

Defendants U.S. Bank, RFMSI Series 2006-S3 Trust, Homecomings,
GMAC, Residential, MERS, and SIW now move the Court to dismiss
the Amended Complaint in its entirety.  Defendants United
Guaranty and Bank of America also move the Court to dismiss
Counts II, IV, and V alleged against them.

## II.   STANDARD OF REVIEW

A Federal Rule of Civil Procedure 12(b)(6) motion should be
granted unless an adequately stated claim is "supported by
showing any set of facts consistent with the allegations in the
complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561
(2007) (internal citations omitted); *see* FED. R. CIV. P. 12(b)(6).
"A pleading that offers labels and conclusions or a formulaic

---

[15] Plaintiffs named LTD Financial as a defendant in the original Complaint,
but LTD is not a named defendant in the Amended Complaint.

recitation of the elements of a cause of action will not do."
*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550
U.S. at 555.  A complaint is also insufficient if it relies upon
"naked assertions devoid of further factual enhancement."
*Iqbal*, 129 S. Ct. at 1949 (internal citations omitted).

    In order to survive a Rule 12(b)(6) motion to dismiss a
complaint must set forth "a claim for relief that is plausible
on its face." *Id.*; *Twombly*, 550 U.S. at 570.  A claim is
facially plausible "when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Iqbal*, 129 S.
Ct. at 1949; *Twombly*, 555 U.S. at 556.

    In considering a Rule 12(b)(6) motion, the court must
construe the complaint in the light most favorable to the
plaintiff, read the complaint as a whole, and take the facts
asserted therein as true. *Mylan Lab., Inc. v. Matkari*, 7 F.3d
1130, 1134 (4th Cir. 1993).  In addition to the complaint, the
court may also examine "documents incorporated into the
complaint by reference, and matters of which a court may take
judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
127 S. Ct. 2499, 2509 (2007).  "Conclusory allegations regarding
the legal effect of the facts alleged" need not be accepted.
*Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995).  Because the
central purpose of the complaint is to provide the defendant

"fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response.  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

III.  ANALYSIS

The Court grants the U.S. Bank Defendants' Motion to Dismiss as to Count I because a declaratory action cannot be used to redress alleged past wrongs and, alternatively, because Plaintiffs fail to allege facts plausibly suggesting an entitlement to declaratory relief.  Similarly, the Court grants both Motions to Dismiss as to Count II because the Amended Complaint does not state plausible grounds for declaratory relief.  The Court grants the U.S. Bank Defendants' Motion to Dismiss as to Count III because Plaintiffs fail to allege facts plausibly stating a breach of fiduciary duty claim.  The Court grants both Motions to Dismiss as to Count IV because Plaintiffs fail to sufficiently plead superior title.  The Court grants both Motions to Dismiss as to Count V because Plaintiffs fail to sufficiently allege facts that establish a violation of the FDCPA.  The Court analyzes each count in order below.

### A.   Count I:   Declaratory Action - First Trust Note

The Court grants the U.S. Bank Defendants' Motion to
Dismiss as to Count I because declaratory relief is
inappropriate as the foreclosure has already occurred and
because the Amended Complaint fails to set forth facts
establishing plausible grounds for declaratory relief.  Federal
Rule of Civil Procedure 57 provides that the federal rules
"govern the procedure for obtaining a declaratory judgment under
28 U.S.C. § 2201." FED. R. CIV. P. 57.  Under the Declaratory
Judgment Act, 28 U.S.C. § 2201(a), "any court of the United
States . . . may declare the rights and other legal relations of
any interested party seeking such declaration, whether or not
further relief is or could be sought."[16]  28 U.S.C. § 2201(a).
"[D]eclaratory judgments are designed to declare rights so that
parties can conform their conduct to avoid future litigation,"
and are untimely if the questionable conduct has already
occurred or damages have already accrued. *See The Hipage Co,
Inc.*, 589 F. Supp. 2d at 615.

Here, Plaintiffs ask the Court to void the foreclosure
"Deed of Sale" and declare that "none of the Defendants has any

---

[16] The Amended Complaint cites to Virginia law as the grounds for the
declaratory actions (Counts I and II). However the federal rules apply to
these claims after removal. *See The Hipage Co, Inc. v. Access 2 Go, Inc.*,
589 F. Supp. 2d 602, 614 (E.D. Va. 2008) (applying Declaratory Judgment Act
to a declaratory action which was originally filed in state court and
subsequently removed to federal court).

right, title, or interest in the First Promissory note." (Am. Compl., "Wherefore" Clause, at 22-23.) However, the Property was foreclosed on August 14, 2009, as a result of Plaintiffs' admitted default on the loans.[17] Thus, any wrong Plaintiffs suffered as a result of the allegedly deficient foreclosure has already occurred. Therefore, a declaratory judgment at this stage is inappropriate.[18]

Two cases with near identical facts were brought in this District and dismissed on similar grounds. *See Merino v. EMC Mortgage Corp.*, No. 1:09-cv-1121, 2010 WL 1039842 (E.D. Va. Mar. 19, 2010) (O'Grady, J.); *Horvath v. Bank of New York*, No. 1:09-cv-1129, 2010 WL 538039 (E.D. Va. Jan. 29, 2010) (Trenga, J.). Like Plaintiff, the homeowners in *Merino* and *Horvath* filed suits against financial institutions alleging a variety of claims based on the foreclosure of their homes following a default on their mortgage loans. *Merino*, 2010 WL 1039842, at *1; *Horvath*, 2010 WL 538039, at *1. In *Merino*, the homeowner sought

---

[17] The Amended Complaint reads "Defendants, having provided conflicting information amongst themselves concerning the identity of the true owner of the Promissory Notes and/or the true party in interest . . . Plaintiff refused to pay to them and Defendants . . . foreclosed on Plaintiff's Property." (Am. Compl. ¶ 77.) Plaintiffs allege that they "refused to pay Defendants" because Defendants "were not the true party in interest of the applicable notes." (Am. Compl. ¶ 101.)

[18] Even if Virginia law applied here, the Court would dismiss Count I because declaratory relief is unavailable under section 8.01-184 of Virginia Code where the "claims and rights asserted have fully matured, and the alleged wrongs have already been suffered." *Bd. of Supervisors v. Hylton Enters.*, 221 S.E.2d 534, 537 (Va. 1976) (citation omitted); *see also Liberty Mut. Ins. Co. v. Bishop*, 177 S.E.2d 519, 524 (Va. 1970) (declaratory judgment is not the correct cause of action when the rights and various duties of the parties have matured).

declaratory relief that "none of the Defendants has any right, title, or interest" in the promissory notes. 2010 WL 1039842, at *4. In *Horvath*, the homeowner sought declaratory relief that the foreclosure deed of sale was void. 2010 WL 538039, at *1. In both cases, the court noted that the underlying purpose of declaratory relief is to guide parties' conduct in the future. *See Merino*, 2010 WL 1039842, at *4 ("a declaratory judgment is an inherently forward-looking mechanism, intended to guide parties' behavior in the future"); *Horvath*, 2010 WL 538039, at *1 ("[d]eclaratory relief is reserved for forward looking actions"). Both the *Merino* and *Horvath* courts therefore held that declaratory relief was not appropriate because the property had already been foreclosed. *Merino*, 2010 WL 1039842, at *4; *Horvath*, 2010 WL 538039, at *1.

Furthermore, even if Plaintiffs' declaratory action was appropriate, Plaintiffs fail to set forth plausible facts showing their entitlement to declaratory relief. Plaintiffs argue that they are entitled to declaratory relief for three reasons: (1) Defendants lack the authority to enforce the terms of the Deed of Trust; (2) Defendants lacked standing to institute the foreclosure proceedings because they could not prove Article III injury; and (3) Defendants could not foreclose on the Property because of the prohibition on double recovery. The Court rejects each of these arguments in turn.

14

First, Plaintiffs argue that Defendants have no authority to enforce the terms of the First Deed of Trust because none of them are the Lender who, according to Plaintiffs, is the only party authorized to remove and appoint substitute trustees to foreclose on the Property.[19]   The Court finds this argument unavailing because the Deed of Trust authorized MERS to foreclose the Property in the event that Plaintiffs defaulted on the loan.   The Deed of Trust states that "[t]he beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS."   (Deed of Trust 4.)   The Deed of Trust also provides "if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:   to exercise any or all of these interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to releasing and canceling this Security Instrument."[20]   (Deed of Trust 4.)   Under the terms of the Deed of Trust, MERS has two roles:   beneficiary and nominee for Lender.   By signing the Deed of Trust, Plaintiffs agreed that

---

[19] Plaintiffs argue that "[o]nly the Lender, or the successor in interest to the Lender, may declare a default, accelerate the Note, remove and appoint substitute trustees, or invoke the power of sale."   (Pls.' Opp'n to U.S. Bank's Mot. to Dismiss 12.)

[20] For purposes of this argument, the Court uses the term "Lender" instead of a specific entity that is in fact the Lender or Noteholder.

MERS, as nominee for Lender and Lender's successors and assigns, had the right to foreclose the Property and recognized that MERS could take any action required of Lender.  Furthermore, Plaintiffs make no legally-supported argument and plead no facts in the Amended Complaint as to why MERS as nominee did not have the right to foreclose and sell the Property in accordance with law or custom.[21]  As such, Plaintiffs' allegation that none of Defendants have the authority to enforce the Deed of Trust is untenable.

In *Ruiz v. Samuel I. White, P.C., et al.*, No. 1:09-cv-688, 2009 WL 4823933, at *1 (E.D. Va. Dec. 11, 2009) (Ellis, J.), the court examined a similar issue and found that MERS, as the nominee, had the authority to appoint successor trustees under the plain terms of the deed of trust.  In that case, a homeowner who defaulted on her mortgage loan alleged MERS lacked authority to appoint a substitute trustee to conduct a foreclosure proceeding on her property.  *Id.*  The *Ruiz* court dismissed the claim because, according to the deed of trust, "MERS (as nominee

---

[21] Plaintiffs argue that under section 55-59(9) of Virginia Code, MERS, as the beneficiary, cannot appoint a substitute trustee to conduct the foreclosure proceedings.  Section 55-59(9) states "[t]he party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby, shall have the right and power to appoint a substitute trustee or trustees for any reason."  VA. CODE. ANN. § 55-59(9) (2009).  According to Plaintiffs, MERS, as beneficiary lacked the power to appoint a substitute trustee because it was not entitled to greater than fifty percent of the obligations due under the First Note.  However, Plaintiffs, who signed the Deed of Trust in 2006 and received a copy of the Deed of Trust and other documents in 2008, knew that MERS is also the nominee of the Lender, and that the Deed of Trust authorizes MERS to act on behalf of the Lender to foreclose the Property in the event of a default on the loans.

for Lender and Lender's successors and assigns) ha[d] the right:
to exercise any or all of those interests, including, but not
limited to, *the right to foreclose and sell the Property*." *Id*.
at *2.   The *Ruiz* court held "[t]he 'if necessary to comply with
law or custom' language [in the deed of trust] does not . . .
require that the nominee have the power to act only when
directed by law; rather, the nominee may act on behalf of the
Lender as authorized by the deed of trust." *Id*. at *1.
Similarly, in the current suit, Plaintiffs' allegation that
Defendants have no right to foreclose the Property fails.

     Second, Plaintiffs argue that Defendants could not
demonstrate standing to institute the foreclosure because they
could not prove Article III injury.   The Court rejects
Plaintiffs' standing argument to the extent that Plaintiffs use
the term "standing" to refer to the requirement that a secured
party first prove in court its right to initiate a foreclosure
before the procedure commences.   The fundamental flaw in
Plaintiffs' allegation is that Virginia is a non-judicial
foreclosure state.   Sections 55-59.1 through 55-59.4, which set
forth the procedural requirements for a non-judicial
foreclosure, do not require an interested party to prove
"standing" in a court of law before initiating the foreclosure
process.   *See* VA. CODE ANN. § 55-59.1 (requiring notice before
sale by trustee to owners, lienors, etc.); § 55-59.2 (requiring

advertisement before sale by trustee); § 55-59.3 (specifying contents of advertisement of sale); § 55-59.4 (setting forth powers and duties of trustee in event of sale under or satisfaction of deed of trust).  The Court therefore rejects Plaintiffs' "standing" argument.

Third, Plaintiffs assert that Defendants have already recovered damages caused by their default and thus Defendants had no right to foreclose on the Property due to the prohibition against double recovery.  Plaintiffs assert that Defendants have received pay-outs from mortgage insurance policies or other credit derivatives.  According to Plaintiffs, these pay-outs cured the injury allegedly caused by their default on the loans, thus, Defendants are barred from double recovery.  The Court rejects Plaintiffs' double recovery argument for two reasons. First, Plaintiffs plead no facts to support their allegations. "[A] plaintiff's obligation to provide the 'ground' of . . . 'entitle[ment] to relief' requires more than labels and conclusions."  *Twombly*, 550 U.S. at 555 (citations omitted). Legal conclusions must be supported by factual allegations and the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, as the Supreme Court does not intend to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 129 S.Ct. at 1950.

Here, Plaintiffs set forth nothing but conclusory statements in support of their double recovery theory.  In one sweeping generalization Plaintiffs allege

> the applicable securitized mortgage pool has already been paid out by one or more of the following: i.) credit enhancement policies, ii.) overcollateralization, iii.) loan loss reserves pay-outs, iv.) mortgage default insurance policies pay-outs, v.) credit default swaps, and/or vi.) other credit derivatives.  These payouts satisfied the alleged indebtedness which is the subject of this Complaint.

(Am. Compl. ¶ 119.)  However, the Amended Complaint contains no specific facts plausibly suggesting that any pay-out actually occurred; that any Defendant received a pay-out as the result of Plaintiffs' default on the first loan; or that the pay-outs satisfied Plaintiffs' obligation under the loan.  These conclusory statements do not adequately set forth a claim for relief that is plausible on its face.

The *Merino* and *Horvath* courts reached a similar result on this issue.  The plaintiffs in *Merino* and *Horvath* raised identical arguments that, as a result of their default on the loans, their obligations were satisfied because the default triggered a pay-out.  *Merino*, 2010 WL 1039842, at *4; *Horvath*, 2010 WL 538039, at *2.  The *Merino* and *Horvath* courts held, and this Court agrees, that "[Plaintiff] provides no factual or legal basis, and the Court finds none, to support his contention that because [Plaintiff's] default triggered insurance for any

losses caused by that default or 'credit enhancement,' he is discharged from the promissory notes and the Property is released from the deeds of trust." *Merino*, 2010 WL 1039842, at *4; *Horvath*, 2010 WL 538039, at *2.

Second, the Court finds the case cited by Plaintiffs in support of the "double recovery" argument irrelevant on these facts. Plaintiffs rely on *Nizan v. Wells Fargo Bank Minnesota Nat'l Ass'n*, 650 S.E.2d 497 (Va. 2007), for the proposition that any Defendants who received pay-outs cannot foreclose on the Property because double recovery is prohibited in Virginia. In *Nizan*, a trustee of a real estate investment trust acquired an apartment loan as part of a securitized mortgage loan pool. *Id.* at 499. After the loan went into default, the trustee foreclosed on the property. *Id.* The trustee sued the guarantor to recover a deficiency after the foreclosure. *Id.* Upon learning that the trustee had settled with the lender regarding the loan pool, the guarantor then sought additional discovery. *Id.* at 500. The Supreme Court of Virginia discussed the common law defense of "double recovery" in *Nizan* and stated that "a party with two valid causes of action is entitled to 'seek compensation in each, [but is], nonetheless, estopped from collecting the full amount [of damages] in the second action if they were partially paid therefor in the first.'" *Id.* at 502 (citation omitted).

*Nizan* has minimum value here for two reasons.  First, although *Nizan* provides for a double recovery defense, *Nizan* focuses on a dispute between a trustee and a guarantor over a deficiency after a foreclosure.  Here, however, Plaintiffs cite no cases extending this defense to apply to actions challenging the legitimacy of a foreclosure.  The *Merino* court reached a similar conclusion.  *See Merino*, 2010 WL 1039842, at *4 n.6 (rejecting homeowner's double recovery argument because "Plaintiffs cite no case indicating [double recovery] defense can be converted somehow into a basis on which to bring a claim before this Court.").  Second, even if the double recovery theory applies here, as mentioned above, "Plaintiffs' allegations on this issue are completely naked and 'devoid of further factual enhancement' and provide no plausible basis" for the relief they seek.  *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949). In short, the Amended Complaint contains no facts that allow the Court to conclude that, despite their default, Plaintiffs are discharged from the promissory notes and that they alone can claim title to the Property because of any alleged pay-outs to Defendants.  Therefore, the Court grants the U.S. Bank Defendants' Motion to Dismiss Count I because the declaratory action is untimely and Plaintiffs fail to plead plausible grounds for declaratory relief.

B.  Count II:  Declaratory Action - Second Trust Note

The Court grants both Motions to Dismiss as to Count II for the same reasons it dismissed Count I, above.  Count II, almost identical to Count I, requests that the Court declare that none of the Defendants has any right, title, or interest in the Second Promissory Note.  However, the only facts alleged as to Count II are that: (1) Plaintiffs borrowed the loan and began paying the loan (Am. Compl. ¶¶ 16, 19, 21); (2) the Second Trust Note was placed in an unknown pool or trust (Am. Compl. ¶ 78); (3) Plaintiffs refused to pay the loan (Am. Compl. ¶ 77);[22] (4) the default resulted in a pay-out from United Guaranty to Countrywide (Am. Compl. ¶¶ 49, 50); and (5) Plaintiffs are now receiving demands for payment from LTD Financial on behalf of United Guaranty (Am. Compl. ¶ 46).  These facts are insufficient to show plausible grounds for the requested declaratory relief for the reasons stated above as to Count I.  Accordingly, the Court grants both Motions to Dismiss Count II.

C.  Count III:  Breach of Fiduciary Duty

The Court grants the U.S. Bank Defendants' Motion to Dismiss as to Count III on the same grounds that it dismisses Count I.  In Count III, Plaintiffs argue that SIW breached its

---

[22] Plaintiffs allege "Defendants, having provided conflicting information concerning the identity of the true owner of the Promissory Notes and/or the true party in interest, Plaintiff refused to pay to them." (Am. Compl. ¶ 77.)  Plaintiffs assert that they brought this suit "to ascertain to whom the money is owed." (Pls.' Opp'n to U.S. Bank's Mot. to Dismiss 5; Pls.' Opp'n to United Guaranty's Mot. to Dismiss 4.)

fiduciary duty by failing to confirm the parties' authority to enforce the Deed of Trust, appoint the substitute trustee, and foreclose the Property. (Pls.' Opp'n to U.S. Bank's Mot. to Dismiss 16.) Plaintiffs make the same arguments in support of these allegations as presented as to Count I, namely that Defendants lacked authority to enforce the Deed of Trust and had no right to foreclose the Property. As discussed in Section A of the Analysis above, these arguments fail because the Deed authorized MERS to foreclose the Property in the event of a default. Therefore, the Court dismisses Count III for the same reasons it dismisses Count I.

### D. Count IV:  Quiet Title

The Court grants both Motions to Dismiss as to Count IV because the Amended Complaint contains no facts supporting Plaintiffs' claim of superior title. "An action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." *Maine v. Adams*, 672 S.E.2d 862, 866 (Va. 2009). A party asserting a quiet title action must plead that he or she has superior title to the property. *See id.*

Here, Plaintiffs allege no facts that plausibly suggest that they have superior title. In fact, the allegations contained in the Amended Complaint suggest quite the opposite.

Plaintiffs allege in conclusory fashion that they are the only parties that "can prove legal and equitable ownership interest in the Property." (Am. Compl. ¶ 134.) However, the Amended Complaint states Plaintiffs refused to pay Defendants on the Notes (Am. Compl. ¶ 77). Even if the Court accepts Plaintiffs' allegation that Defendants do not have a legal interest in the Property, Plaintiffs do not allege that they fully satisfied their obligations to the real party in interest. Furthermore, Plaintiffs make no factual showing that the debt was otherwise forgiven or cancelled. Thus, the facts pled in the Amended Complaint do not plausibly suggest Plaintiffs have an interest in the Property superior to "any competing interest." Plaintiffs therefore fail to state a claim for quiet title.

Moreover, the Court rejects Plaintiffs' allegation that, "[g]iven the splitting, selling, trading, and insuring of the pieces of the Notes on the secondary market, the Deeds of Trust are split from the Notes and are unenforceable . . . " (Am. Compl. ¶ 139) for three reasons. First, this allegation is a legal conclusion not entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1940. Second, in arguing against Defendants' Motions, Plaintiffs cite no legal authority supporting their assertion of unenforceability. Third, this allegation contradicts the terms of the Deed of Trust and

Virginia law.[23]   "Transfer of an instrument, whether or not the
transfer is a negotiation, vests in the transferee any right of
the transferor to enforce the instrument, including any right as
a holder in due course."   VA. CODE ANN. § 8.3A-203(b) (2009).   The
Deed of Trust states "[t]he [First Promissory] Note or a partial
interest in the Note (together with this Security Instrument)
can be sold one or more times without prior notice to Borrower."
(Deed of Trust 12.)   The language of the Deed of Trust indicates
that the parties contemplated subsequent transfers of the Note
and that the Note and the Deed of Trust could be sold together.
With each transfer, the right to enforce the Deed passed along
with the Note from transferor to transferee.   Therefore, the
Court is unpersuaded by Plaintiffs' argument that the right to
enforce the Deed of Trust is lost due to the transfer and
securitization of the loan.   Consequently, the Court grants both
Motions to Dismiss as to Count IV.

---

[23] Recently, the *Merino* court analyzed an identical allegation that "given the
splitting, selling, trading, and insuring of the pieces of the Notes on the
secondary market, the Deeds of Trust are split from the Notes and are
unenforceable."   2010 WL 1039842, at *2.   The *Merino* court held, and this
Court agrees, that such an allegation fails to provide a plausible basis for
relief in view of the settled law of negotiable instruments and the
enforcement of deeds of trust securing notes after their negotiation.   *Id.*

### E.  Count V:  Violation of the FDCPA

The Court grants both Motions to Dismiss as to Count V for three reasons.[24]  First, similar to Counts I, II, and III, Count V is based on the premise that Defendants did not have authority to enforce the Deed of Trust and to foreclose the Property. Because the Court rejects these arguments, the Court dismisses Count V for the reasons stated in Section A of the Analysis above.

Second, the Court dismisses Count V because the claim that SIW misrepresented "the status of the debt, the amount of the debt, and ownership of the debt" (Pls.' Opp'n to U.S. Bank's Mot. to Dismiss 16) is partially time-barred.  A suit alleging a violation of the FDCPA must be brought within one year of the violation's occurrence.  *See* 15 U.S.C. § 1692k(d).  An alleged FDCPA violation occurs, and the action accrues, when the alleged debt collector sends the debtor the notice of default.  *See* *Vitullo v. Mancini*, 684 F. Supp. 2d 747, 753 (E.D. Va. 2010).

Here, four communications from SIW to Plaintiffs are relevant: two letters dated May 22, 2008, one letter dated March 20, 2009, and one letter dated April 24, 2009.  SIW sent the first two letters informing Plaintiffs of the default more than

---

[24] Plaintiffs withdrew their FDCPA claim against all Defendants but SIW because SIW, which is not a servicer, is subject to the FDCPA and "[t]here are several factual allegations of SIW misrepresenting the status of the debt, the amount of the debt, and ownership of the debt, etc." (Pls.' Opp'n to U.S. Bank's Mot. to Dismiss 16.)

one year before Plaintiffs filed the current suit on August 13, 2009.  Therefore, alleged violations arising from these two letters are time-barred.

Third, as to the two remaining letters sent in 2009, Plaintiffs fail to allege sufficient facts to support their FDCPA claims against SIW.  The FDCPA provides a cause of action where a debt collector "use[s] any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  False representation of the character, amount, or legal status of any debt violates FDCPA.  *See* 15 U.S.C. § 1692e(2)(A).  The Amended Complaint alleges that, in addition to providing the total amount due at the time, the two letters stated that SIW was a debt collector and U.S. Bank was the creditor.  (Am. Compl. ¶¶ 33-35, 40.)  It further alleges that SIW also provided a copy of payment history on the loan along with the letter dated April 14, 2009.  (Am. Compl. ¶ 41.)  Plaintiffs allege the amounts disclosed in the payment history "as being applicable to the note do not add up" to the amount due in either letter.  (Am. Compl. ¶ 41.)  However, the Amended Complaint does not allege sufficient facts to suggest that the information included in the letters was false, deceptive or misleading.  The Amended Complaint contains no allegations as to the actual amounts owed as of the dates in the letters; nor does the Amended Complaint

identify a particular error in these letters. Thus, Plaintiffs'
allegations have insufficient factual support to state a
plausible claim for relief.[25] *Iqbal*, 129 S.Ct. at 1949.
Therefore, the Court grants both Motions to Dismiss as to Count
V of the Amended Complaint.

IV. CONCLUSION

The Court grants the U.S. Bank Defendants' Motion to
Dismiss Counts I, II, III, IV, and V of the Amended Complaint
and the United Guaranty Defendants' Motion to Dismiss Counts II,
IV and V of the Amended Complaint. The Court grants the U.S.
Bank Defendants' Motion to Dismiss as to Count I because
declaratory relief is not available where the alleged wrongs
have already been suffered and, alternatively, because
Plaintiffs fail to state plausible grounds for declaratory
relief. The Court grants both Motions to Dismiss as to Count II
because Plaintiffs fail to plausibly allege facts that warrant
the declaratory relief sought. The Court grants the U.S. Bank
Defendants' Motion to Dismiss as to Count III because Plaintiffs
fail to state plausible grounds for a breach of fiduciary duty
claim. The Court grants both Motions to Dismiss as to Count IV

---

[25] Even if the two letters dated May 22, 2008, were not time-barred, they
provide no additional support to Plaintiffs' allegations. According to the
Amended Complaint, one of the letters stated that (1) "the original Note
evidencing [Plaintiffs'] indebtedness has been either lost, misplaced or
destroyed, and is unavailable" (Am. Compl. ¶ 25) and (2) SIW was a debt
collector representing MERS (Am. Compl. ¶ 26). The other letter stated that
SIW was a debt collector representing Homecomings. (Am. Compl. ¶ 29.) In
either case, these allegations fail to suggest that the statements in the
letters were false, deceptive or misleading.

because Plaintiffs fail to sufficiently allege superior title. The Court grants both Motions to Dismiss Count V as unopposed as to all Defendants except for SIW, and as to SIW because the claim is insufficiently pled.   Accordingly, it is hereby

ORDERED that Defendants U.S. Bank, RFMSI Series 2006-S3 Trust, Homecomings, GMAC, Residential, MERS, and SIW's Motion to Dismiss First Amended Complaint is GRANTED.   It is further

ORDERED that Defendants United Guaranty and Bank of America's Motion to Dismiss all Claims in the Amended Complaint Asserted Against United Guaranty Residential Insurance Company of North Carolina and Bank of America, N.A. is GRANTED.   It is further

ORDERED that dismissal is WITH PREJUDICE as to all Defendants and no further leave to amend will be granted because Plaintiffs had two full opportunities to plead their claims and the Court's analysis set forth herein demonstrates that further pleading would be futile as a matter of law. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Clerk is directed to forward a copy of this Order to counsel.

Entered this *22*ⁿᵈ day of June, 2010.

Alexandria, Virginia

_____/s/_____
Gerald Bruce Lee
United States District Judge